**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ALANDO BATES,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-07-926-M** |
| ) | |
| **RANDALL WORKMAN, Warden,** ) | |
| ) | |
| **Respondent.** ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28

U.S.C. § 2254 seeking a writ of habeas corpus.  United States District Judge Vicki Miles-

LaGrange referred this matter to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  The Respondent has filed a response to which

Petitioner has replied.  Thus, the merits of the petition are at issue.  For the following

reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions for possession of precursor

substances with intent to manufacture a controlled dangerous substance, possession of

a controlled dangerous substance, and possession of a firearm in the commission of a

felony, for which he was sentenced to one 20-year term of imprisonment and two 10-year

terms of imprisonment with the terms to be served consecutively. Case No. CF-2003-154,

District Court of Grady County.  Petition, p. 2.[1]  On direct appeal the Oklahoma Court of

Criminal Appeals affirmed Petitioner's convictions and sentences in a summary opinion.

<u>Id.</u> at 3; <u>Bates v. State</u>, No. F-2003-1415 (Okla. Crim. App. Dec. 8, 2004) (attached to

---

[1] The page numbers referenced for the petition are the pre-printed page numbers in the upper right hand corner of the petition.  Thus, page two is actually the first page of the petition.

Response as Ex. 3).  Petitioner applied to the trial court for post-conviction relief which was denied.  Petition, pp. 3-4; Response, Ex. 4.  Petitioner appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision.  Bates v. State, No. PC-2007-360 (Okla. Crim. App. May 9, 2007) (attached to Response as Ex. 5).

Petitioner raises five grounds for relief.  In Ground One, he alleges that the evidence supporting his convictions was insufficient.  Petition, p. 4.  In Ground Two, Petitioner claims that prosecutorial misconduct denied him a fair trial.  Id. at 5. Petitioner contends in Ground Three that his sentence is excessive.  Id. at 6.  In Ground Four, Petitioner claims that trial counsel rendered ineffective assistance.  Id. at 7.  Finally, in Ground Five, Petitioner claims that he was denied the effective assistance of appellate counsel.  Id. at 8.

## I.    BACKGROUND

On the evening of May 14, 2003, Oklahoma Highway Patrol Trooper Miles Anderson was traveling south on the H.E. Bailey Turnpike to assist a motorist when he came up behind a four-door Mercury.  The Mercury was traveling in the inside, "fast" lane approximately ten miles below the speed limit and changed lanes right as Trooper Anderson approached it.  Jury Trial Tr. Vol. I 95 (Dec. 15, 2003).  Trooper Anderson checked the Mercury's license plate and learned that the tag expired in September 2002 although the affixed decal indicated that it would not expire until September 2003.  Upon learning this information, Trooper Anderson stopped the Mercury.  Tr. Vol. I 96.

Brenda Esparza was driving the Mercury, Pollyanna Miller was sitting in the passenger side of the vehicle, and Petitioner was sitting in the middle of the back seat.

2

Tr. Vol. I 97, 101, 114, 126-27.  Trooper Anderson asked Esparza to produce her driver's license and car insurance and when she could not, he asked her to sit in his vehicle while he checked to see whether she had a valid driver's license.  Tr. Vol. I 96-97.  Trooper Anderson learned that Esparza's driver's license had been revoked, and was in his vehicle with her preparing a written citation when Trooper Kevin Sparkman pulled up behind him.  Tr. Vol. I. 98-99.  Just as Trooper Sparkman arrived, Petitioner opened the back passenger door of the Mercury and ran out into a pasture.  Trooper Sparkman noted that Petitioner was shirtless and wearing camouflage pants, and chased after him but was not able to apprehend him.  Tr. Vol. I 99; Jury Trial Tr. Vol. II 159-61 (Dec. 16, 2003).

While Trooper Sparkman chased after Petitioner, Trooper Anderson handcuffed Esparza and Miller and seated them on the grass near his patrol car.  Tr. Vol. I 99-101.  When Trooper Sparkman returned shortly after he gave chase, he and Trooper Anderson conducted an inventory search of the Mercury.  Tr. Vol. I 101-102.  In the back seat, Trooper Sparkman discovered a loaded, sawed-off shotgun in the area where Petitioner had been sitting and a propane tank with anhydrous ammonia stored inside wrapped in a camouflage jacket.  Tr. Vol. I 103-104, 107, 110, 112; Tr. Vol. II 162-63, 165.  In the front console near the radio between the driver and passenger seats, the troopers found a wooden box containing marijuana and a change purse holding baggies of methamphetamine.  Tr. Vol. I 105, 143, 147.  Additionally, in the trunk, the troopers discovered several boxes of kitchen matches, several bottles of liquid HEET, and several cans of starter fluid, all of which are common precursors for manufacturing

methamphetamine.  Tr. Vol. I 106, 108;  Tr. Vol. II 164, 221-23.  After conducting this search, Trooper Anderson arrested Esparza and Miller.  Tr. Vol. I 111.

Petitioner was apprehended the day after he fled.  Tr. Vol. I 126; Tr. Vol. II. 169, 228, 314.  He was interviewed the day after his capture and told the interviewing troopers that Esparza and Miller had nothing to do with the items discovered in the Mercury.  Tr. Vol. II 170-71, 197, 225, 232.

The same day that Petitioner was captured, Cotton County Sheriff's deputies searched the trailer that Petitioner and Miller lived in and an electronic workshop that they used for storage.  Tr. Vol. II 320-22, 328, 375.  Sheriff's deputies found numerous items associated with the manufacture of methamphetamine in the workshop along with materials indicating that the methamphetamine manufacturing process was taking place at the time of the search.  Tr. Vol. II 321, 329-33, 376-77, 384-85, 387-88.

## II.   STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different

result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III.   DISCUSSION

### A.      Sufficiency of the Evidence

In Ground One, Petitioner contends that the evidence was insufficient to support his convictions. He alleges there was no proof that he knowingly possessed the tank of anhydrous ammonia, the marijuana and methamphetamine in the front console, and the shotgun because the evidence did not  exclude the reasonable hypothesis that either Esparza or Miller owned them. Brief in Support, pp. 2-8. Petitioner also contends that

the State failed to prove one of the elements of possession of precursor substances with intent to manufacture a controlled dangerous, that the precursor was possessed in an "unauthorized container," because it did not introduce any evidence that it was illegal to store or transport anhydrous ammonia in the tank found in the back seat of the car. Id. at 4.

Petitioner made the same arguments on direct appeal and the Oklahoma Court of Criminal Appeals rejected them, finding that the evidence, though circumstantial, was sufficient to support Petitioner's convictions.  Further, the Court of Criminal Appeals determined that the State was not required to prove that Petitioner possessed the anhydrous ammonia in an "unauthorized container" because "such a finding is not required by [Okla. Stat. tit. 63, § 2-401]."  Response, Ex. 2, p. 2.  Respondent contends that Ground One does not merit relief because the Oklahoma Court of Criminal Appeals' decision is not contrary to or an unreasonable application of clearly established federal law and because the evidence was sufficient to support Petitioner's conviction. Response, pp. 5-12.

In reviewing the sufficiency of evidence, the relevant question under clearly established Supreme Court precedent "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); Romano v. Gibson, 239 F.3d 1156, 1164 (10th Cir. 2001). A reviewing court should not weigh conflicting evidence or consider the credibility of witnesses.  See Jackson, 443 U.S. at 319;  Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th

Cir. 1993).  Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs, 982 F.3d at 1487.

Section 2254(d) substantially limits the scope of federal habeas review of challenges to the sufficiency of the evidence where, as here, the state court decided the issue on the merits.  Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000).  Under § 2254(d), a habeas petitioner is not entitled to relief unless the state court unreasonably determined that the evidence was sufficient which "amounts to deference squared." Torres v. Lytle, No. 03-2098, 90 Fed. Appx. 288, 290 (10th Cir. Jan. 23, 2004)[2]; see also Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).  It is not clear whether sufficiency of the evidence questions are "legal," and reviewed pursuant to § 2254(d)(1) for the unreasonable application of clearly established federal law, or "factual" and subject to review under § 2254(d)(2) for the reasonableness of the determination of the facts in light of the evidence.  Willingham v. Mullin, 296 F.3d 917, 929-30 (10th Cir. 2002); Jones v. McKune, No. 06-3342, 214 Fed. Appx. 784, 786 (10th Cir. Jan. 26, 2007).  Whichever standard governs though, a federal habeas court's inquiry is "limited to determining whether the [state court] applied a standard that was contrary to that for sufficiency of the evidence as set forth in Jackson or whether it unreasonably applied the Jackson standard itself to the facts of this case." Jones, 214 Fed. Appx. at 786.   Applying either § 2254(d)(1) or (d)(2), Petitioner is not entitled to relief.

The Oklahoma Court of Criminal Appeals applied its decisions in Easlick v. State, 90 P.3d 556 (Okla. Crim. App. 2004) and Spuehler v. State, 709 P.2d 202 (Okla. Crim.

---

[2] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

App. 1985), and thereby effectively reviewed Petitioner's sufficiency of the evidence claim under <u>Jackson</u>.  <u>See</u> <u>Torres</u>, 317 F.3d at 1152 n.3.  The Court of Criminal Appeals application of <u>Jackson</u> was not unreasonable.

To obtain a conviction for possession of precursor substances with intent to manufacture a controlled dangerous substance, there must be proof beyond a reasonable doubt that the defendant: (1) knowingly or intentionally, (2) possessed, (3) a precursor substance (such as anhydrous ammonia), (4) with the intent to use the precursor substance, (5) to manufacture a controlled dangerous substance (such as methamphetamine).  <u>See</u> Okla. Stat. tit. 63, § 2-401(G)(1); <u>see also</u> OUJI-CR 2d § 6-3A. A conviction for possession of a controlled dangerous substance must be supported with proof beyond a reasonable doubt that the defendant: (1) knowingly and intentionally, (2) possessed, (3) a controlled a dangerous substance.  <u>See</u> Okla. Stat. tit. 63, § 2-402(A); <u>see also</u> OUJI-CR 2d § 6-6.  Possession of a weapon during the commission of a felony is established with proof of the defendant's: (1) knowing, (2) willful, (3) possession of, (4) a weapon (such as a shotgun), (5) while committing a felony offense, (6) possession of the weapon in connection with the commission of the felony.  <u>See</u> Okla. Stat. tit. 21, § 1287(A); <u>see also</u> OUJI-CR 2d § 6-38.

Contrary to Petitioner's claims, and as the Oklahoma Court of Criminal Appeals found, the evidence adduced at trial amply demonstrated that he knowingly possessed the anhydrous ammonia tank with intent to manufacture methamphetamine, knowingly and intentionally possessed the marijuana and methamphetamine, and knowingly and

wilfully possessed a shotgun while committing the felony of possession of precursor substances with intent to manufacture methamphetamine.

The evidence presented at trial, viewed in the light most favorable to the prosecution, showed that Petitioner was a passenger in a vehicle where police found a propane tank full of anhydrous ammonia and a loaded shotgun in the seat where Petitioner had been sitting, and several other methamphetamine precursors in the trunk. Beyond Petitioner's proximity to the tank and gun and the quantity of precursors in the car, the evidence showed that the tank was wrapped in a camouflage shirt jacket and that when Petitioner was seen fleeing the car, an indicator of his consciousness of guilt, he was not wearing a shirt but did have on a pair of camouflage pants.  A search of the shop on the property where Petitioner lived revealed evidence that the process of manufacturing methamphetamine was under way on the date Esparza's car was stopped. The evidence also established that Petitioner had access to the marijuana and methamphetamine because it was located within his reach between the front seats. Significantly, Petitioner stated during his interview that Esparza and Miller had nothing to do with the items found in the car.  A jury could easily convict Petitioner of all three charges based upon this evidence.  See, e.g., Hill v. State, 898 P.2d 155, 166-68 (Okla. Crim. App. 1995) (finding circumstantial evidence sufficient to support convictions for possession of a controlled dangerous substance and possession of a firearm while committing a felony because it raised more than a mere suspicion of guilt and demonstrated that the defendant knew of and had the intent to control or dispose of drugs, fled the scene once caught, and was proximately located near a loaded weapon

that could have been used in a dangerous manner).  The jury's findings based upon the evidence are entitled to deference on federal habeas review.  <u>See, e.g., Lucero v. Kerby</u>, 133 F.3d 1299, 1312 (10th Cir. 1998) (noting that a federal habeas court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." (quotations omitted)).

There is no requirement under state or federal law, as Petitioner suggests, that the evidence eliminate all reasonable alternative hypotheses. The only constitutional requirement is that the evidence establish guilt beyond a reasonable doubt. <u>See</u> <u>Jackson</u>, 443 U.S. at 319.  Oklahoma law formerly required evidence to eliminate all reasonable alternative explanations, but that requirement was abandoned while Petitioner's case was pending on direct appeal.  <u>Easlick</u>, 90 P.3d at 557.  In any event, the evidence, and particularly Petitioner's statement that Esparza and Miller had nothing to do with what was found in the car, is sufficient to eliminate the reasonable alternative hypothesis that the anhydrous ammonia tank, marijuana and methamphetamine, and shotgun belonged to Miller or Esparza and not Petitioner.  <u>See</u> <u>Hill</u>, 898 P.2d at 166-68.  Indeed Petitioner's jury must have so found as they were instructed that "[a]ll of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion of a defendant's innocence."  Brief in Support, p. 1.

The petition could be read to peripherally assert an equal protection claim based upon the Oklahoma Court of Criminal Appeals' abandonment of the reasonable alternative hypotheses requirement and attendant application of the <u>Jackson</u> standard to Petitioner's case.  <u>See</u> Brief in Support, p. 2.  However, such a claim does not entitle

Petitioner to habeas relief because it is foreclosed by the Tenth Circuit Court of Appeals' recent decision in <u>Cummings v. Sirmons</u>, 506 F.3d 1211, 1237 (10th Cir. 2007).  In <u>Cummings</u>, the Court of Appeals determined that a writ of habeas corpus is not an appropriate mechanism to redress a state court's application of state law that effectively treats a petitioner differently than other similarly situated criminal defendants because no Supreme Court decision has held that a criminal defendant's equal protection rights may be violated by a state court's erroneous application of state criminal law and because permitting relief on such grounds "would essentially allow state criminal defendants to convert all state law issues raised on direct appeal into constitutional claims cognizable in federal habeas proceedings."  <u>Id.</u>  Accordingly, Ground One does not require relief.


### B.     Prosecutorial Misconduct

During closing arguments, the prosecutor stated:

> Is there anyone in this jury that thinks that [Petitioner], from sitting in the backseat, couldn't have reached up there and used the methamphetamine? He's a methamphetamine user. Pollyanna Miller is. Brenda Esparza is. He could have reached up there, gotten the methamphetamine, gotten the marijuana. They're three peas in a pod. Three people just alike. Two women and a man. Light skinned and dark skinned, but the three of them are just alike. They are charged together. They had possession of it. All three of them did. All three of them are charged in this county. All three of them are going to be prosecuted in this county, and he's the one you're looking at today.

Trial Tr. Vol. III 424-25 (Dec. 17, 2003).  Petitioner complains that the prosecutor's reference to him as a methamphetamine user denied him a fair trial because it attempted to incite the jurors to be prejudiced against him and amounted to an improper

presentation of the prosecutor's personal feeling that Petitioner is a "drug addict."  Brief in Support, pp. 9-10.

The Oklahoma Court of Criminal Appeals entertained this argument on direct appeal and concluded that it did not justify relief because the "single remark of the prosecutor could be characterized as a reasonable inference from the evidence" and the trial court's subsequent instructions were adequate to cure any possible error.  Response, Ex. 3, pp. 2-3.  Respondent argues that the prosecutor's characterization of Petitioner as a methamphetamine user was a reasonable inference drawn from the evidence and that it did not, considering all the surrounding circumstances including the strength of the State's case, deprive him of due process.  Response, pp. 13-17.

On federal habeas review, claims of prosecutorial misconduct generally are reviewed for due process violations.  Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006), cert. denied, 127 S. Ct. 560 (2006).  To be entitled to relief, a habeas petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. (internal quotations and citations omitted).  In considering whether a prosecutor's remarks rendered a trial fundamentally unfair, the entire proceeding should be examined, including the strength of the evidence against the petitioner, as well as any cautionary steps offered by the trial court to counteract improper remarks.  Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006), cert. denied 127 S. Ct. 2117 (2007) (quoting Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam)).  "Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment."

Le, 311 F.3d at 1013. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland, 459 F.3d at 1024.

A prosecutor's personal attack upon a defendant is improper. Le, 311 F.3d at 1021 (citing Darden, 477 U.S. at 180-81). However, in this case, the Oklahoma Court of Criminal Appeals determined that the prosecutor's comment could be a reasonable inference from the evidence, and as the discussion of Ground One noted, there was more than sufficient evidence to support an inference that Petitioner used methamphetamine. Moreover, while the Court was not provided with the trial court's instructions to the jury, the trial court's preliminary instructions cautioned the jury that statements or arguments by counsel were not evidence. Tr. I 78-80. Petitioner's attorney cautioned the jury not to take the closing statements as evidence, and the jury was instructed by the court during the arguments to rely on its own memory of the evidence and not the statements of counsel. Tr. III 436, 443-44, 466. These admonishments protected Petitioner's interest in having his guilt determined on the evidence introduced at trial rather than the comments of counsel even though his attorney did not contemporaneously object to the prosecutor's characterization of Petitioner as a methamphetamine user. See Bland, 459 F.3d at 1015 ("The jury is presumed to follow its instructions . . . ."). Further, Petitioner's attorney told the jury during closing arguments that there was no evidence that Petitioner used methamphetamines. Tr. III 436-37. Under the circumstances and against the

strength of the State's evidence, the Oklahoma Court of Criminal Appeals' determination is not contrary to or an unreasonable application of applicable federal law.  Accordingly, Ground Two does not warrant relief.

### C.    Excessive Sentence

In his third ground for relief, Petitioner asserts that his consecutively running sentences are excessive because they total 40 years and "effectively ensure[] that [Petitioner] . . . will spend the rest of his life in prison."  Brief in Support, p.  11. Petitioner acknowledges that his sentences are within the statutorily prescribed ranges, but argues that federal habeas relief should be granted because the "punishment does not bear a direct relationship to the nature and circumstances of the offenses."  Id.

Considering this claim on direct appeal, the Oklahoma Court of Criminal Appeals held that Petitioner's sentences were not excessive and that the trial court did not abuse its discretion by imposing them consecutively.  Response, Ex. 3, p. 3.  Respondent argues that Petitioner's sentencing claim is a matter of state law that presents no issue for federal habeas review because Petitioner's sentences are within the prescribed ranges.  Response, pp. 17-19.

The Eighth Amendment proscribes "gross disproportionality" between the crime committed and the punishment imposed.  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); see also Hawkins v. Hargett, 200 F.3d 1279, 1281-82 (10th Cir. 1999).   In reviewing a sentence for gross disproportionality, a federal habeas court should be reluctant to "interfere with the legislative determination of an appropriate sentence range."  Hawkins, 200 F.3d at 1285.  If an initial comparison of the offense and the

14

sentence does not lead to an inference that the punishment is grossly disproportionate to the crime, a federal habeas court's examination of the sentence ends.  See id. at 1282; see also United States v. Gurule, 461 F.3d 1238, 1247 (10th Cir. 2006).  Moreover, the imposition of consecutive sentences presents no constitutional concern for federal habeas review because "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes."  Hawkins, 200 F.3d at 1285 n.5.

Petitioner's consecutive sentences do not warrant federal habeas relief.  As Petitioner concedes, they fall well within the statutory ranges and when viewed individually, they plainly are not grossly disproportionate to the offenses committed.  Petitioner's complaint stems from the trial court's imposition of the sentences consecutively.  However, such a claim does not present a federal constitutional issue.  See id.; Archer v. Ray, No. 06-6083, 188 Fed. Appx. 799, 801 (10th Cir. July 17, 2006).  Accordingly, Ground Three presents no viable claim to federal habeas relief.

**D.     Ineffective Assistance of Counsel**

In Ground Four Petitioner claims that trial counsel performed deficiently in several respects:

A.     Defense counsel totally failed to conduct any pre-trial discovery or other trial preparation[;]

B.     Counsel failed to file for a suppression hearing for evidence he knew had been obtained in violation of the Fourth Amendment . . . .[;]

C.     Counsel failed to object when the trial court denied the jury's request to see evidence referenced throughout the proceedings, specifically a written witness statement that impeached the testimony of the same witness given from the stand[;]

15

D.      Failure of counsel to zealously challenge trial testimony of various officers when written reports and previous statements were available that would have impeached testimony from the stand[;] and

E.      Counsel failed to adequately prepare and present defense evidence as [a] rebuttal to [the] State's case in chief, specifically evidence of the existence of significant body tattoos that refuted direct testimonial/eyewitness evidence given from the stand.

Brief in Support, p. 12.  These issues were not raised on direct appeal.  Petitioner claims in Ground Five that appellate counsel was ineffective for failing to present these ineffective assistance of trial counsel claims on direct appeal.  See id. at 27.

When Petitioner raised his ineffective assistance of counsel claims during post-conviction proceedings, the Oklahoma Court of Criminal Appeals found that appellate counsel's failure to "recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance," and that Petitioner did not meet his burden of proof on the claim.  Response, Ex. 5, p. 2.  Further, citing Okla. Stat. tit. 22, § 1086, the Court of Criminal Appeals noted that Petitioner waived post-conviction review of any issue that he could have, but did not, raise on direct appeal and that such waived claims could not be the basis of post-conviction relief.  Id.  Respondent contends that Petitioner procedurally defaulted on the ineffective assistance of counsel claims raised in Ground Four and has not shown cause and prejudice to excuse the default or that a fundamental miscarriage of justice will occur if a procedural bar is applied.  Respondent also argues that all of the ineffective assistance of counsel claims should be denied on the merits.  Response, pp. 19-28.

"When questions of procedural bar are problematic . . . and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the

procedural issues and reject a habeas claim on the merits." Cannon v. Mullin, 383 F.3d 1152, 1159 (10th Cir. 2004); accord Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007). As cause excusing his procedural default, Petitioner cites the ineffective assistance of appellate counsel in failing to raise ineffective assistance of trial counsel claims on direct appeal.  Brief in Support, p. 27.  Whether an ineffective assistance of appellate counsel claim may serve as cause to excuse a procedurally defaulted claim turns on the merits of the ineffective assistance of appellate counsel claim.  Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002).  An evaluation of an ineffective assistance of appellate counsel claim based upon the omission of an issue requires consideration of the omitted issue. Hain v. Gibson, 287 F.3d 1224, 1231 (10th Cir. 2002); see also Hammon v. Ward, 466 F.3d 919, 925-26 (10th Cir. 2006).  Thus, determining whether Petitioner has shown cause to excuse the procedural default on his ineffective assistance of trial counsel claims effectively requires an evaluation of the merits of both the ineffective assistance of trial and appellate counsel claims. Thus, the procedural default question should be overlooked because the ineffective assistance claims are more readily denied on their merits.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Id. at 688.  Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. at 694.  Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time.  Id. at 689.  There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance."  Id.

 Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently.  Id. at 697.

In analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, a habeas court should,

> [L]ook to the merits of the omitted issue, generally in relation to the other arguments counsel did pursue.  If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations and quotations omitted).  Unless there is a reasonable probability that the omitted claim would have resulted in the provision of relief on appeal, there is no ineffective assistance of appellate counsel.  Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

The Oklahoma Court of Criminal Appeals' order denying post-conviction relief indicates that it rejected Petitioner's ineffective assistance of trial counsel claims based upon a procedural ground, the failure to raise the issue on direct appeal, and resolved the ineffective assistance of appellate counsel claim on its merits.  See Response, Ex. 5, p. 2.

18

The deferential standard by which a federal habeas court reviews a state court's adjudication of a claim applies only to claims that the state court has heard on the merits. Turrentine v. Mullin, 390 F.3d 1181, 1189 (10th Cir. 2004). Accordingly, Petitioner's ineffective assistance of trial counsel claims must be resolved after an independent review of the record, but Petitioner's ineffective assistance of appellate counsel claim must be reviewed only to determine whether the Oklahoma Court of Criminal Appeals' resolution of that claim was contrary to or an unreasonable application of clearly established federal law.

### 1.    Failure to Conduct Pretrial Investigation, Engage in Discovery, and Present Evidence [3]

At trial, Petitioner's attorney asked the trial court for permission to show the jury tattoos on Petitioner's chest and back to cast doubt on whether Petitioner was the person who fled from Esparza's car. The prosecution objected to the request, citing defense counsel's failure to respond to a motion for discovery and disclose his intent to introduce the tattoos as evidence. Defense counsel explained that he did not identify the tattoos as evidence that he wished to introduce in response to the motion for discovery because the tattoos' relevance only became apparent to him during trial when Trooper Anderson and Trooper Sparkman testified about their ability to view Petitioner. The trial court refused to allow Petitioner to show the jury his tattoos either in connection with his

---

[3] Petitioner's ineffective assistance claim concerning trial counsel's alleged failure to conduct pretrial discovery or file pretrial motions raised in subground A of the petition involves many of the same facts as his complaint about his attorney's failure to present evidence which is contained in subground E of the petition. As these claims are somewhat interrelated and rely on many of the same facts, they are evaluated together.

attorney's cross-examination of Trooper Sparkman or in his case-in-chief.  Tr. II 178-84, 216-18, 391-96.

Petitioner alleges that trial counsel performed deficiently by failing to conduct an adequate investigation because he did not take advantage of the prosecution's open file policy and look through the State's file prior to trial.  Brief in Support, pp. 13-14. Apparently, Petitioner believes that had his trial attorney looked at the State's file, he would have been aware that Petitioner had tattoos, and that Trooper Anderson and Trooper Sparkman would give testimony that could be cast into doubt by the tattoos.  See Tr. II 180-84.  Petitioner also contends that trial counsel should have filed a motion for discovery after he learned at the preliminary hearing what evidence the State intended to introduce.  Brief in Support, p. 14.  Additionally, Petitioner suggests that his attorney should have disclosed the tattoos as evidence to be presented along with a video recording of Petitioner fleeing Esparza's car.  Id. at 25.  Respondent contends that portions of the record refute Petitioner's claims, and that he has not shown that his trial attorney performed deficiently or that any prejudice resulted from the deficient performance alleged.  Response, pp. 30-32, 42-46.

Counsel's alleged failures do not amount to deficient performance and Petitioner has not shown sufficient prejudice stemming from them.  First, the record refutes Petitioner's contention that trial counsel did not look through the prosecution's file prior to trial and actually shows that trial counsel was in possession of a copy of the file before trial.  Tr. II 394.

Further, trial counsel represented Petitioner at the preliminary hearing where the State presented Trooper Anderson and Trooper Sparkman as witnesses along with a deputy sheriff who also testified at trial.  In addition to presenting their testimony, the State told the judge: "we'll Burk[]s notice the fact that a search was done at [Petitioner and Miller's] residence for trial and will have other officers come testify about what was found back at their residence." Prelim. Hr'g Tr. 68-69 (Aug. 18, 2003).  Trial counsel's involvement with the preliminary hearing and possession of the prosecution's file precludes a finding of prejudice based upon his failure to file a discovery motion because Petitioner has not identified any evidence that the State introduced at trial that his attorney did not know about from either the preliminary hearing or the prosecution's file.

Similarly, trial counsel's deficient performance is not shown through the failure to respond to the State's discovery motion with his intent to introduce Petitioner's tattoos and the videotape as evidence.  Trial counsel explained to the court that he did not appreciate the relevance of Petitioner's tattoos before trial.  He indicated that their evidentiary value only became apparent to him when he cross-examined Trooper Sparkman at trial.  Tr. II 183, 394-95.  Because the tattoos did not appear relevant before trial, counsel did not make a pretrial disclosure of his intent to show the jury the tattoos. See id.  Counsel's actions must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" without the benefit of hindsight.  See Strickland, 466 U.S. at 690; accord Richie v. Mullin, 417 F.3d 1117, 1123 (10th Cir. 2005), cert. denied, 547 U.S. 1045 (2006).  There is nothing objectively unreasonable about counsel's failure

to recognize the tattoos' alleged evidentiary significance and attendant failure to identify them as evidence for trial.

Moreover, counsel's failure to disclose his intent to introduce Petitioner's tattoos and the videotape as evidence in response to the State's discovery motion was not prejudicial because there is no reasonable probability that the outcome of the proceeding would have been different but for counsel's alleged errors.  Trial counsel showed the videotape in his case-in-chief without objection from the State.  Tr. II 199, 391-92, 398-99.  Further, the tattoos on Petitioner's chest and back had little probative value.  The witnesses who identified Petitioner as the individual who fled from Esparza's car remembered his skin tone, build, hairline, clothing, and face, and relied on their memory of those things to positively identify Petitioner.  Tr. I 97, 99, 124, 128, 139, 141; Tr. II 234-36, 239, 292, 299-300, 302.    Trooper Anderson and Trooper Sparkman did not believe that they had seen Petitioner well enough to notice tattoos on his body.  Tr. I 140, 143, 151; Tr. II 180, 189, 191, 206-207.  Further, the trial judge viewed Petitioner's tattoos and  still did not allow him to reveal them to the jury.  Tr. II 216-18.

## 2.    Failure to File a Motion to Suppress

Two of the State's witnesses, Ron Hicklin and Tana Bastida, were acquainted with Petitioner and Miller.[4]  Hicklin rented a six-acre property where he resided in a house with Bastida.  The six-acre property contained an electronic shop that Hicklin and Bastida used for storage, and Hicklin also kept his travel trailer on the property.  At the

---

[4] Hicklin and Bastida were engaged to be married at the time the relevant events took place and then married before trial.  Tr. II 320, 342.  To maintain consistency with the trial testimony of all the witnesses, they will be described by the names they had during the relevant events.

time of their arrest, Petitioner and Miller were renting and living in Hicklin's trailer. Hicklin also permitted Petitioner and Miller to use the electronic shop for storage.  Tr. II 320-22, 358-60.

The day after Esparza's car was stopped, Bastida went to the Cotton County Sheriff's office to report as missing a pickup truck that Hicklin loaned to Petitioner and Miller, and to inform authorities that there was a chemical odor emanating from the shop. Tr. II 324-27, 360-61, 373, 380-81.  Several deputies came out to Hicklin's property in response to Bastida's report but Hicklin was not present when they arrived.  Tr. II 362, 373-75.  The deputies obtained Bastida's consent to search the trailer and electronic shop. Tr. II 328, 375, 379.  Bastida showed the deputies which items in the shop belonged to her, which were Hicklin's, and which belonged to Petitioner and Miller. Deputies found methamphetamine paraphernalia in the trailer and, among the items belonging to Petitioner in the shop, evidence that methamphetamine was being manufactured. Tr. II 329, 332-34, 376-77, 382, 384-85.  They also found part of a sawed off shotgun barrel. Tr. II 377.

Petitioner contends that Bastida lacked authority to consent to a search of the trailer and his belongings in the shop, and that his trial attorney should have filed a pretrial motion to suppress the evidence obtained as a result of the search.  Brief in Support, pp. 16, 18.  Respondent contends that the search was legal and that no prejudice came from trial counsel's failure to file a pretrial motion to suppress because even if the evidence was suppressed, there was still enough evidence to convict Petitioner. Response, pp. 32-38.

While there is no question that Bastida had authority to consent to the search of the electronic shop, see U.S. v. Rith, 164 F.3d 1323, 1328-29 (10th Cir. 1999), it certainly would have been prudent for Petitioner's counsel to challenge both the search of the electronic shop and the trailer.[5]   However, even assuming for the moment that trial counsel did perform deficiently in failing to move to suppress this evidence, no prejudice resulted from the failure.  The testimony concerning the materials that the deputies found in the trailer and shop was not essential to prove the charges stemming from the stop of Esparza's car.  If all the evidence from the search of the trailer and shop was excluded, there still would be more than enough  evidence for a jury to convict Petitioner.  The other evidence still established that a tank of anhydrous ammonia and a shotgun were found in Esparza's car near where Petitioner was sitting, the tank was full and wrapped in a camouflage jacket and Petitioner was wearing camouflage pants when he was arrested, as was the person who fled from the car, several other unused methamphetamine precursors were found in the vehicle, Petitioner stated that Esparza and Miller had nothing to do with the items in the car, and that Petitioner knew Esparza and Miller prior to the date they were stopped by Trooper Anderson and all three of them had access to the marijuana and methamphetamine found in between the front seats.  Tr. I 99, 103-105, 126-27, 143, 147; Tr. II 170-71, 197, 248, 345-47, 353-54.  Accordingly, there is no reasonable probability the outcome of the proceeding would have been

---

[5] The undersigned notes that Petitioner's attorney did orally move to suppress the contents of a filing cabinet that was in the electronic shop, but it appears the trial court denied the motion more on procedural grounds rather than from a consideration of the merits of the motion.  Tr. II 390-91.

different if trial counsel had tried to have this evidence suppressed.  This claim of ineffective assistance does not entitle Petitioner to relief.

### 3. Failure to Object When Trial Court Denied Jury's Request to See a Written Witness Statement

After jury deliberations began, the jury sent the trial judge a note asking to see what was marked for identification as Exhibit 12, a written statement given by a witness who testified at trial that was neither offered nor admitted into evidence.  The trial judge told counsel that she proposed to tell the jury that "Exhibit 12 was not offered or admitted into evidence." Tr. III 489.  Both the prosecutor and Petitioner's attorney agreed to that response.  Id.  Petitioner contends that his trial counsel performed deficiently for "fail[ing] to comply [with the] jury's request for state's exhibit 12 which was submitted during jury trial."  Brief in Support, p. 20.  He argues that depriving the jury of Exhibit 12 denied him "the prospect of a potential single jury who would not vote for a guilty verdict." Id.  Respondent notes that neither party moved to have Exhibit 12 admitted at trial and argues that it was not ineffective assistance for defense counsel to acquiesce in the response that the trial court made to the jury's request.  Response, pp. 38-40.

This claim of ineffective assistance is unavailing.  First, a review of the record indicates that the trial court was correct in informing the jury that Exhibit 12 had not been admitted into evidence.  Tr. II 388.   Therefore, there is nothing objectively unreasonable about counsel agreeing  with the trial court that the jury be so instructed.  Petitioner does not contend that trial counsel was ineffective for failing to move to have Exhibit 12 admitted.  Second, as Respondent notes, even if Exhibit 12 was admitted into evidence and it was somehow deficient performance for counsel to agree to the trial

25

court's instruction, Petitioner has not shown prejudice resulting from the error.  The witness who gave the statement memorialized in Exhibit 12 testified about Petitioner's actions after he fled Esparza's car; thus, it is highly unlikely that the jury's possession of Exhibit 12 would have produced an outcome determinative effect as Petitioner suggests. The witness' testimony was used to explain how Petitioner was apprehended, was consistent with another witness' testimony concerning the same events, and neither witness' testimony was particularly probative as to whether Petitioner possessed the items found in Esparza's car.  Tr. II 291-302.  As to that issue, there was extensive evidence supporting Petitioner's guilt.  Accordingly, this claim does not entitle Petitioner to relief.

### 4. Failure to Impeach Officer Testimony with Prior Inconsistent Testimony from Preliminary Hearing

Petitioner identified what he has characterized as several "inconsistencies" between Trooper Anderson's preliminary hearing testimony and his testimony at trial. Petitioner contends that Trooper Anderson's trial testimony should not have been admitted or deemed credible because of these inconsistencies.  Petitioner further suggests that trial counsel should have argued that Trooper Anderson fabricated his testimony and that counsel's failure to advance such an argument deprived him of a viable defense. Brief in Support, pp.  20-22.  Respondent contends that trial counsel tested Trooper Anderson's recollection of the events through cross-examination and argues that if trial counsel had objected to Trooper Anderson's testimony on the bases Petitioner suggests, the objections would have been overruled.  Response, pp. 41-42.

In Oklahoma, "conflict[s] or inconsistenc[ies] in the witness's testimony go[] to the weight and credibility of that testimony and are issues properly addressed on cross-examination." Myers v. State, 133 P.3d 312, 321-22 (Okla. Crim. App. 2006), cert. denied, 127 S. Ct. 939 (2007). Further, "[i]t is the jury's job to weigh the evidence, resolve conflicting evidence, and reconcile conflicting testimony." Bell v. State, 172 P.3d 622, 626-27 (Okla. Crim. App. 2007). Accordingly, the alleged inconsistencies in Trooper Anderson's testimony did not provide trial counsel with a basis for seeking its exclusion and the credibility of Trooper Anderson was for the jury's resolution. Counsel did not perform deficiently in failing to object to the testimony on the grounds Petitioner has advanced.

Further, counsel did not perform deficiently in choosing not to pursue the police fabrication defense that Petitioner contends he should have. There is a strong presumption that counsel's "conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000). The record of the trial shows that defense counsel's overall strategy was to raise questions concerning the identity of the person who fled from Esparza's car and to suggest that Petitioner was merely an innocent hitchhiker who did not know Esparza and Miller prior to the date Trooper Anderson stopped Esparza's car. Counsel's decision to pursue this strategy instead of arguing that police fabricated their testimony or reports relating to what was

found in the vehicle is not objectively unreasonable.  Moreover, a review of the record indicates that trial counsel did attempt to impeach Trooper Anderson's trial testimony with his preliminary hearing testimony.  Tr. I 133-51.  Accordingly, this argument does not show an entitlement to relief.

### 5.    Ineffective Assistance of Appellate Counsel

Lastly, Petitioner contends that appellate counsel was ineffective for failing to "collaborate" with him concerning issues outside the record that should have been raised on direct appeal and in failing to raise the instances of ineffective assistance of trial counsel that Petitioner asserted in Ground Four.  Brief in Support, pp. 25-27.  Respondent contends that because Petitioner's ineffective assistance of trial counsel claims have no merit, his appellate attorney was not ineffective for failing to assert them as issues on direct appeal.  See Response, pp. 28-30.   When this argument was presented in Petitioner's application for post-conviction relief, the Oklahoma Court of Criminal Appeals determined that Petitioner failed to meet his burden of proof on the claim because "[t]he fact [that] appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance . . . ." Response, Ex. 5, p. 2.

Petitioner's claim that his appellate attorney failed to collaborate with him concerning issues outside the trial record that should have been presented on direct appeal does not show appellate counsel's ineffectiveness because Petitioner does not specify what issues he believes trial counsel should have but did not present that would have been based on information outside the trial record but within Petitioner's

28

knowledge.  Accordingly, Petitioner makes no showing of prejudice resulting from the failure to collaborate.  The Oklahoma Court of Criminal Appeals' resolution of the claim was not contrary to or an unreasonable application of clearly established federal law.

Similarly, Petitioner's claim that his appellate attorney rendered ineffective assistance by failing to assert the ineffective assistance of trial counsel claims argued in Ground Four fails because none of the ineffective assistance of trial counsel claims have merit. The "failure to raise an issue that is without merit does not constitute constitutionally ineffective assistance of counsel because the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (internal citation and quotation omitted).  Indeed, the "process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Burger v. Kemp, 483 U.S. 776, 784 (1987) (quotation omitted).  Accordingly, it was not deficient performance for appellate counsel to omit the ineffective assistance of trial counsel claims that Petitioner raised in Ground Four.  Further, the failure to raise the ineffective assistance of trial counsel claims did not prejudice Petitioner either as none of the claims had merit or were likely to change the outcome of the direct appeal. Accordingly, the Oklahoma Court of Criminal Appeals' determination of this claim was not contrary to or an unreasonable application of clearly established federal law and Ground Five does establish a viable claim to relief.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. The Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by February 7, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 18th day of January, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE